WM. MASSEY, *et al.*, Respondents, *vs.* JARED E. SMITH, Appellant.

1. *Register and Receivers at land office—Duplicate certificates of purchasers given by, prima facie evidence of purchase—Evidence in rebuttal.*—Duplicate certificates thereof given by registers and receivers of public lands are *prima facie* but not conclusive evidence of the payment of purchase money for such lands, and may be overthrown by the testimony.

2. *U. S Land register—Purchase of public land by—Claim against one holding under by a person holding under later patent—Laches against the State—Receiver —Fraudulent combination—Equity.*—Under the statutes and the principles of law relating to that subject, United States registers in this State have no right to purchase public lands by entry at their offices, nor can laches be imputed to the State for failing to take action against persons holding under such purchaser, where nothing shows that the officers afterward connected with the land department knew anything of such purchase, nor was there anything on the records of the land office to apprise them of that fact. And on discovery of the purchase, regardless of the date of discovery, the State may annul the same, issue a new patent; and the one buying under the patent may hold regardless of the fact that he may have known of the former purchase by the register. And his rights are not affected by the fact that the land was also purchased by the receiver at the land office, where the latter purchased jointly with the Register, more especially when the circumstances show a fraudulent combination between the register and receiver in effecting their purchase.

*Appeal from Dade County Circuit Court.*

*C. B. McAfee*, for Appellant, contended that this case at bar was not within the reasoning of the court in Wickersham vs. Woodbeck, 57 Mo. 59.

*Bray & Cravens*, for Respondents cited : Wickersham vs. Woodbeck, 57 Mo. 59.

HENRY, Judge, delivered the opinion of the court.

On the 5th of June, 1857, Nicholas F. and James I. Jones were Receiver and Register of the State Land Office at Springfield, Missouri. Plaintiffs allege in their petition that on that day said Joneses purchased at said Land Office, § 12 of township No. 31 of Range 29, lying in Dade county, and that plaintiffs—some of them by purchase, and others by descent—own the interest of said Joneses in said land ; that no patent ever issued to plaintiffs or said Joneses ; that after they became owners, as aforesaid, plaintiff Massey and the ancestors and grantors of

his co-plaintiffs, presented to defendant, then register of lands for the State, the certificate of purchase and payment issued by said receiver and register to N. F. and J. I. Jones, and demanded a patent for the land, but it was not issued, and that afterward defendant, while register as aforesaid, and with knowledge that said land had been previously sold to the Joneses, and that the certificate of purchase and payment were then held by said Massey, intending to defraud plaintiffs, fraudulently caused a patent for said land to be issued to himself on the 23d day of August, 1867, and plaintiffs ask that he be declared and held as a trustee for them, etc. Defendant in his answer denies all of the foregoing allegations, except that he procured a patent for the said land, and alleges that at the date of his purchase, said land was designated on the books and records of the State as vacant and unsold, and that there was at that time no entry of record or other matter upon the books or records of the State showing or indicating that the Joneses had purchased; that they never reported such sale to the State, or paid the whole or any part of the purchase money.

The court, by its decree, found that at the date of their alleged purchase, said Nicholas F. and James I. Jones were respectively receiver and register of the State Land Office, at Springfield, and also found for plaintiffs on all the issues made by the pleadings, and made a decree as prayed for in plaintiff's petition. In order that the views of this court in this case may be fully understood, it is necessary to state the substance of the testimony on the only issue of fact which we propose to consider —that is, as to the payment of the purchase money for the land in controversy by the Joneses. On the other issues, we would not be inclined to disturb the finding of the court.

The following are copies of the duplicates of the certificates of purchase and payment issued to Nicholas and James Jones:

"No. 660. State Land Office at Springfield, Mo., June 5th, 1857. Received of James and Nicholas Jones, of Greene county, Mo., eight hundred dollars, being in full for sec. 12, T. 31, R. 29, containing 640 acres, at $1.25 per acre. Signed, N. Fain Jones, Receiver."

"I do hereby certify that I have sold to James and Nicholas Jones the sec. 12, T. 31, R. 29, as the foregoing receipt specifies, and that the foregoing is the receiver's receipt for the purchase of the same. Signed, James S. Jones, Register."

Conceding that the duplicate certificates are *prima facie* evidence of the payment of the purchase money by the Joneses, they are not conclusive of that fact, and the defendant had the right, and it devolved upon him, to disprove the *prima facie* case made by the duplicates.

On this issue the evidence offered by defendant, which is uncontradicted, is, that in the report of the sales of lands at the Springfield land office, from the 1st day of April, 1857, to the 30th day of September, 1857, a period of time embracing the date of the alleged sale to the Joneses, that sale is not reported, and that report was by Jas. I. Jones, Register, certified to as correct on the 1st day of October, 1857. In that report, duplicate No. 660 is returned as the number of a duplicate issued to Nicholas F. and James I. Jones for 40 acres of sec. No. 10, T. No. 31, of R. No. 29. Sec. 18 of the Revised Statutes of 1855, p. 987, provides that "it shall be the duty of the register to make quarterly reports of all lands sold under the provisions of this act, at his office, to the register of lands at the city of Jefferson, describing said lands by ranges, townships, sections or parts of sections, the number of acres, by whom entered and the amount paid for the same, and the said register of lands shall record the same in a book to be kept for that purpose." As, therefore, no report of said sale was ever made by the register, and he was required to make quarterly reports of sales made, we conclude that the statement in defendant's answer is true; that at the date of his purchase there was nothing on the books or records in the register's office indicating that the land in controversy had been sold.

This taken in connection with other circumstances, well calculated to excite suspicion in regard to the good faith of the register and receiver, in that transaction, we think, rebutted the *prima facie* case made by the plaintiffs as to the payment of the purchase money. In the quarterly report embracing the time of

their alleged purchase, is a duplicate of the identical number of that upon which this suit is based, and for an entirely different tract of land.

The receiver, it seems, was well known as Nicholas F. Jones, yet he signs the duplicates as N. Fain Jones. The purchasers as named in the duplicates are Nicholas Jones and James Jones. Why drop the initial of the middle names? Why did the receiver sign the duplicate as N. Fain Jones? These facts themselves would not sustain a charge of fraud, but taken in connection with the omission of the register, James I. Jones, to report the sale, which by his official oath he was bound to do, prove that there was something wrong in the transaction—that they themselves thought so, and were endeavoring " to cover their tracks." The purchase money, it is evident, was not paid by them within the quarter ending the 30th day of September, 1857. There was no attempt on the part of the plaintiffs to prove that it was paid at any other time, and it is reasonable to suppose that if by mistake it was not reported when it should have been, and was afterwards reported and paid for, there would be something on the plats, books, or other records in the land office, to show that fact.

We are satisfied from the evidence that the money was not paid, and should have had no hesitancy so to find if the Circuit Court had not found otherwise.

If they did not pay the purchase money, they have no right to the land as against the State, and of course no equity against a purchaser from the State, and those who claim under them have no other right than theirs.

The court below found that defendant, Smith, had notice of plaintiff's claim, and of the nature of their claim, but that knowledge cannot invalidate his purchase, if, in fact, the Joneses had not paid the purchase money for the land.

But even if the Joneses had bought and paid for the land, the question occurs, had the register of lands any right to purchase land for sale at the land office of which he was register.

An agent to sell lands has no right to buy them. His principal would not be bound by such a sale. " One cannot at the same time take upon himself incompatible duties and characters. Thus,

a person cannot act as agent in buying for another goods belonging to himself, and at the sale made for his principal he cannot become the buyer." (Sto. Ag., § 9, 8th edition.)

Does this familiar principle apply to the class of public officers to which the Joneses belonged? In 1843, Hon. John Nelson, then Attorney-General of the United States, in an official communication to the Secretary of the Treasury, Hon. John C. Spencer, in answer to a·communication from the latter, requesting his opinion "whether it is competent for the Treasury Department, or for the President, by regulation, to prohibit registers and receivers of the United States Land Offices from purchasing or entering public lands," distinguishes between registers and receivers, as did also the Act of Congress as to their right to purchase lands of the government at the office of which they were register and receiver. "This class of officers (speaking of registers), it is quite clear, both upon principle and authority, and by the express terms of the law which created them, cannot properly be concerned in the purchase of the public lands." Again he says: "Receivers are not the agents of the government, by whom the sales of public lands are effected." It will be observed that the Attorney-General places the inability of registers to purchase, not upon the express provisions of the act of Congress alone, but also upon the common law doctrine of agency.

In the case of The People vs. The Township Board of Overyssel (11 Mich. 223), four of the ten relators, who took a contract to build piers, were members of the board of free-holders, organized under the act for the purpose therein mentioned, and that let the contract on behalf of the public. After stating that an agent could not act for himself and his principal, in the same transaction, Manning, J., who delivered the opinion of the court, says: "All public officers are agents, and their official powers are fiduciary. They are trusted with public functions for the good of the public, to protect, advance and promote its interests, and not their own. And a greater necessity exists, than in private life, for removing from them every inducement to abuse the trust reposed in them, as the temptations to which they are sometimes

exposed are stronger, and the risk of detection and exposure is less."

Public policy especially demands the application of the rule to the class of officers to which the Joneses belonged.

The government holds a vast public domain, which it is the policy to settle with an industrious and enterprising population, and for that purpose to sell them the lands at the low prices placed upon them by the government. If officers entrusted with the sale were permitted to purchase these lands by entry at their own offices, it would bring them in competition with those who desire to purchase, to make homes for themselves and their families, and tempt these officers to engage in speculative entries, and to take undue advantages of the very class of men for which our acts of Congress and of the General Assembly have shown a decided partiality.

It will not be asked in this State how advantages could be taken by the registers of the Land Office. · Many of our people have sad experience on this subject, and could tell not only how it might be, but how it has been done.

There is no provision of the statutes of this State, creating said offices and officers, which gives to the register the right to buy lands at his office ; and some of the provisions of the law in force at the date of the alleged purchase by the Joneses are incompatible with the existence of any such right.

The 14th section of the act (Rev. Stat. 1865) provides that where two or more persons claim pre-emptions on the same land, the register and receiver are to decide between them.

If permitted to purchase, a contingency might arise, under the act, in which he might sit as the trier of a fact in his own case.

We are satisfied that if a purchase had been made, and the purchase money paid by the Joneses, as alleged, it would not have been binding on the State.

Nor can laches be imputed to the State for not avoiding the sale sooner than it was done by the sale to the defendant.

If laches are in any case imputable to the State, the facts in the case at bar repel the implication, for it nowhere appears that any officer of the State, connected with her land department,

knew of such purchase, nor was there anything of record in the Land Office to apprise the officers of the State, either in the Land or any other department, that said land has been purchased or paid for by the Joneses. So that if they bought and paid for the land, the State could avoid the sale, and has so done by the sale and patent to defendant. If the State could avoid the sale to the Joneses, and has done it by the sale to Smith, then whether defendant had or had not knowledge of the previous purchase and payment, he had a right to purchase the land from the State, and plaintiffs have no equity which can be enforced against him. That the receiver had a right to purchase does not help the plaintiff's case. It was not a sale of part of a section to one, and another part to the other. It was a sale of the whole section to them jointly, and there are so many circumstances indicating the receiver's complicity with the Register in a fraud upon the State, that a court of equity will not go out of the beaten paths to seek a remedy for him.

In the case of the People vs. The Township of Overyssel, cited above, the judge who delivered the opinion of the court, holds the following language on this subject applicable to the case at bar:

" We think it no exception to the rule we have stated, that all the contractors were not members of the board of free-holders, or that those who were members were a minority of the board. The rule would not amount to much, if it could be evaded in any such way. It might almost as well not exist, as to exist with such an exception. The public would reap little or no benefit from it."

With the concurrence of the other judges the judgment is reversed and the petition dismissed. Sherwood, C. J., not sitting.